## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Pawn America Minnesota, LLC and
Pawn America Wisconsin, LLC,

                Plaintiffs,

v.

Affiliated FM Insurance Company,

                Defendant.

Civil File No. _____

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

Plaintiffs Pawn America Minnesota, LLC and Pawn America Wisconsin, LLC (collectively, "Pawn America"), for its Complaint against Affiliated FM Insurance Company ("AFM"), states and alleges as follows:

### NATURE OF THE ACTION

1.      This is a contract action to enforce Pawn America's rights under a policy of property insurance issued by AFM. Fourteen of Pawn America's locations suffered physical loss or damage during the civil commotion arising from the killing of George Floyd Jr. in Minneapolis, Minnesota on May 25, 2020.  AFM acknowledged that these losses were insured under the policy, but AFM then applied a $10,000 deductible to the losses at each insured location, in contravention of the policy's language and applicable law.

2.      AFM and Pawn America agree upon the total amount of insured loss, but dispute AFM's application of fourteen separate deductibles to the insured losses. AFM has unjustifiably refused to acknowledge that the approximately five-day period of

continuous civil commotion in Minneapolis, St. Paul and nearby areas, arising out of the untimely death of George Floyd Sr., constitutes a single "occurrence" under the policy's deductible provision.

3.      Pawn America therefore seeks a declaration of the parties' rights and obligations under the insurance policy with respect to the insured losses and damages for AFM's breach of its contractual obligations.

## PARTIES

4.      Pawn America Minnesota, LLC is a limited liability company organized under the laws of Minnesota, with its principal place of business in Burnsville, Minnesota.

5.      Pawn America Minnesota, LLC owns and operates twelve pawn shops in Minnesota.

6.      No member of Pawn America Minnesota, LLC is a citizen of Rhode Island, or maintains its principal place of business in, or is incorporated in, Rhode Island.

7.      Pawn America Wisconsin, LLC is a limited liability company organized under the laws of Wisconsin, with its principal place of business in Burnsville, Minnesota.

8.      Pawn America Wisconsin, LLC owns and operates four pawn shops in Wisconsin, including two pawn shops that suffered insured physical loss or damage at issue in this suit.

9.      No member of Pawn America Wisconsin, LLC is a citizen of Rhode Island, or maintains its principal place of business in, or is incorporated in, Rhode Island.

10.     Defendant AFM is incorporated under the laws of Rhode Island with its principle place of business at 270 Central Avenue, Johnston, Rhode Island 02919.

11.     AFM is authorized to do business and issue insurance policies in the state of Minnesota.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     AFM is subject to personal jurisdiction in this Court because, among other things, it transacts business in the state of Minnesota and insures businesses and properties in the state of Minnesota, including Pawn America and the properties described below owned by Pawn America.

14.     Venue in this district is proper under 28 U.S.C. § 1391 because Pawn America's principal place of business is in this district and a substantial portion of the events giving rise to the claim occurred in this district.

## PAWN AMERICA'S COVERAGE UNDER THE AFM POLICY

15.     AFM sold insurance policy No. ES209 to Pawn America Minnesota, LLC, for the period December 1, 2019 to December 1, 2020 ("the Policy"), a true and correct copy of which is attached to this Complaint as Exhibit A and incorporated by reference.

16.     AFM drafted the Policy.

17.     The Policy insures covered property against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE," except where excluded. *See* Policy (Ex. A) at Insuring Clause, p. 21/75.

18.     "Civil commotion" is a "Named Peril" under the Policy. *See* Policy (Ex. A) at Definitions, p. 63/75. The Policy does not contain an exception for losses arising from civil commotion, civil unrest or riot.

19.     The insured physical loss or damage at issue in this suit occurred at "Locations" covered by the Policy.

20.     Pawn America Wisconsin, LLC is an Additional Named Insured under the Policy with respect to the covered "Locations" in Wisconsin.

21.     The Policy contains a $10,000 deductible "per occurrence" for insured loss or damage, except where otherwise stated, and the Policy provides the following with respect to the deductible:

> **G. DEDUCTIBLE AMOUNT:**
> This Company will not be liable for loss or damage including any insured Business Interruption loss, in any one **occurrence** until the amount of loss or damage exceeds the deductible amount shown below and then this Company will only be liable for its share of the loss or damage in excess of the deductible amount. If two or more deductibles apply to a single **occurrence**, then no more than the largest deductible amount will apply. However, this Policy allows for the application of separate deductibles and distinct deductibles for specific loss or damage as shown below.
>
> The following deductible amounts shall apply per **occurrence**, unless otherwise stated, for insured loss or damage under this Policy:
> …
> 8. $10,000 All Other Losses.

*See* Policy (Ex. A) at Declarations, p. 12/75.

22.     The Policy defines an "occurrence" as

**"DEFINITIONS**

**occurrence** means the sum total of all loss or damage of the type
insured, including any insured Business Interruption loss, arising out of
or caused by one discrete event of physical loss or damage . . .

*Id.* 43-44.

## THE CIVIL COMMOTION FOLLOWING THE KILLING OF GEORGE FLOYD JR.

23.     On Monday, May 25, 2020, George Floyd Jr., was killed in Minneapolis,
Minnesota during an encounter with members of the Minneapolis Police Department.

24.     The next day, May 26, video of Floyd's killing spread widely on social
media. That evening, protests erupted, including surrounding the Third Precinct and the
site of Floyd's killing. *See* https://www.startribune.com/george-floyd-death-ignited-
protests-far-beyond-minneapolis-police-minnesota/569930771/ (last accessed 6/28/2021)

25.     On May 27, the protests intensified in Minneapolis. *Id. See also,*
https://www.startribune.com/as-mayor-frey-calls-for-officer-s-arrest-violence-intensifies-
in-minneapolis/570804062/ (last accessed 6/28/2021).

26.     On May 28, Minneapolis Mayor Jacob Frey declared a state of emergency
and Governor Tim Walz mobilized the national guard. https://kstp.com/news/minnesota-
national-guard-activated-to-control-protests-following-george-floyds-death/5743967/
(last accessed 6/28/2021).

27.     Despite these measures, the evening of May 28 saw protests cause
extensive additional property damage. The Third Precinct police station was burned to

the ground. https://www.mprnews.org/story/2020/06/30/the-precinct-is-on-fire-what-happened-at-minneapolis-3rd-precinct-and-what-it-means (last accessed 6/28/2021).

28.     That same evening, the St. Paul and Minneapolis suburbs also experienced wide-spread protests and property damage. *See*

https://minnesota.cbslocal.com/2020/05/29/protesters-take-minneapolis-police-3rd-precinct-building-during-3rd-night-of-george-floyd-protests/ (last accessed 6/28/2021).

29.     On Friday, May 29, Governor Walz issued a curfew for Minneapolis and St. Paul in response to the growing civil commotion.

https://kttc.com/2020/05/29/minneapolis-mayor-imposes-curfew-for-friday-saturday/ (last accessed 6/28/2021).

30.     On Saturday, May 30, Governor Walz fully activated the Minnesota National Guard in response to the civil commotion. https://kstp.com/news/citing-largest-national-guard-deployment-in-minnesotas-history-gov-walz-addresses-efforts-to-contain-george-floyd-protests/5745408/ (last accessed 6/28/2021).

31.     The civil commotion continued in the greater St. Paul and Minneapolis area, and in adjoining and nearby communities, through May 31. *See*

https://www.startribune.com/duluth-protests-over-george-floyd-s-death-called-unprecedented/570907812/ (last accessed 7/7/2021).

32.     The period of civil commotion resulted in approximately $550 million in damage to approximately 1,500 properties in Minneapolis and St. Paul over a period of approximately five consecutive days. https://www.startribune.com/minneapolis-st-paul-

buildings-are-damaged-looted-after-george-floyd-protests-riots/569930671/ (last accessed

6/28/2021).

33.     The civil commotion arising from the killing of George Floyd Jr. is

considered the second-most destructive civil disturbance in United States history, after the

1992 Los Angeles riots. https://www.startribune.com/twin-cities-rebuilding-begins-with-

donations-pressure-on-government/571075592/ (last accessed 7/9/2021).

34.     Among the property damaged were fourteen (14) Pawn America locations.

35.     Pawn America and AFM agree that the following Pawn America locations

("Pawn America Insured Locations") suffered insured physical loss or damage, on the

following dates, and in the following amounts:

| Pawn America Insured Location | Date of Physical Loss or Damage | Agreed Amount of Total Loss |
|---|---|---|
| Roseville, MN | May 27 | $31,793 |
| Robbinsdale, MN | May 28 | $19,872 |
| Burnsville, MN | May 28 | $11,707 |
| Fridley, MN | May 28 | $12,986 |
| Bloomington, MN | May 28 | $9,188 |
| Anoka, MN | May 28 | $4,740 |
| Coon Rapids, MN | May 28 | $15,825 |
| West St. Paul, MN | May 28 | $12,546 |
| Mankato, MN | May 30 | $4,102 |
| St. Cloud, MN | May 30 | $4,240 |

| Duluth, MN | May 30 | $5,198 |
| Rochester, MN | May 30 | $2,889 |
| Madison, WI | May 31 | $25,174 |
| West Allis, WI | May 31 | $6,513 |

## PAWN AMERICA'S CLAIM AND AFM'S RESPONSE

36.     On or about May 28, Pawn America first notified AFM of physical loss and damage caused by the civil commotion at certain retail stores. AFM assigned Claim No. 504448 in respect of these losses. Pawn America subsequently provided information to AFM about the losses at each of the Pawn America Insured Locations.

37.     By letter of January 29, 2021, AFM informed Pawn America that, in calculating the amount of payable loss, AFM applied a separate, $10,000 deductible "to total gross loss per location." An attachment to the January 29, 2021 letter, a true and complete copy of which is attached as Exhibit B, reflected a separate $10,000 deductible subtracted by AFM from the amount of total recoverable loss for each Pawn America Insured Location.

38.     AFM determined that the combined loss at all Pawn America Insured Locations was $166,773. After applying a separate $10,000 deductible at each separate Pawn America Insured Location, AFM offered to cover only $59,903 of Pawn America's losses. AFM's application of a $10,000 deductible to the losses at each Pawn America Insured Location had the effect of reducing available policy proceeds by $106,870.

39. The Policy authorizes AFM to apply deductibles on a per location basis for certain types of loss (e.g., flood losses). The Policy does not authorize AFM to apply per location deductibles for civil-commotion related losses.

40. By letter dated March 8, 2021, Pawn America requested that AFM reconsider its decision to apply per-location deductibles, in light of the Policy's requirement of a "per occurrence" deductible and other terms and applicable law.

41. After receipt of Pawn America's letter of March 8 explaining that the Policy did not permit AFM's application of per location deductibles under the circumstances, AFM shifted and claimed by letter dated March 25, 2021 that, rather than applying a separate deductible per insured location, AFM had determined that the losses arose out of individual acts of vandalism and/or theft, and that there was a separate occurrence in each city in which Pawn America's stores were located.

42. Eight of the fourteen Pawn America Insured Locations are in the greater Minneapolis/St. Paul area and all eight suffered physical loss or damage within a 24-hour period. Seven of the eight stores within the greater St. Paul/Minneapolis area suffered physical loss or damage on the evening of May 28, 2020.

43. The St. Paul Police Department reported that, on the same evening of May 28 and into the early morning hours of May 29, 2020, more than 170 businesses were looted or damaged.

44. Each of the Pawn America Insured Locations suffered insured physical loss or damage in a five-day period of continuous civil commotion precipitated by the killing of George Floyd Jr. *See Goyette v. City of Minneapolis*, No. 20-CV-1302, 2020 WL

3056705, at \*3 (D. Minn. June 9, 2020) (describing "five-day period of unprecedented civil unrest"); *Tirado v. City of Minneapolis*, No. 20-1338 (JRT/ECW), 2021 WL 679261, at \*8 (D. Minn. Feb. 22, 2021) (describing the police response to the George Floyd protests as a "single police operation" in response "to a related series of protests").

45.     The civil commotion resulting from the killing of George Floyd Jr. constitutes a single "occurrence" under the Policy. *See Sherwin-Williams Co. v. Ins. Co*., 863 F.Supp. 542, 547 (N.D. Ohio 1994), *aff'd and adopted sub nom*, 105 F.3d 258 (6th Cir. 1997) (widespread looting and vandalism over a period of several days constituted a civil commotion); *N. Bay Ins. Auth. v. Indus. Indem. Co*., 6 Cal.App. 4th 1741, 1746, 10 Cal. Rptr. 2d 88, 91-92 (1992) (civil commotion "denotes a broader, more prolonged disturbance than 'riot'" and has been defined as "[a]n uprising among a mass of people which occasions a serious and prolonged disturbance and an infraction of civil order, not attaining the status of war or an armed insurrection") (quoting *Hartford Fire Ins. Co. v. War Eagle Coal Co*., 295 Fed. 663, 665 (4th Cir. 1924)); *Pan American World Airways v. Aetna Cas. & Sur. Co*., 368 F.Supp. 1098, 1136 (S.D.N.Y. 1973) (civil commotion is "a situation similar to a riot but involving either a more serious disturbance or one that is part of a broader series of disturbances"), *aff'd* 505 F.2d 989, 1019 (2d Cir. 1974).

46.     Indeed, the Insurance Services Office (ISO) issued a Property Claims Service catastrophe serial number (ISO CAT Code), number 2033, to classify losses arising out of the protests for the period from May 26 to June 1. https://www.reinsurancene.ws/pcs-designates-mn-riots-a-catastrophe-warns-of-loss-potential/ (last accessed 7/15/21);

https://www.marsh.com/us/insights/research/us-civil-unrest-property-insurance-considerations.html (last accessed 7/15/21).

47.     The Policy provides that, in the event of the perils of terrorism or earth movement, all loss or damage over the course of a continuous 72-hour period is one "occurrence." See Policy (Ex. A) at Definitions, p. 63/75. But the Policy does not include any similar temporal limitation on an "occurrence" associated with the peril of civil commotion.

48.     By letter dated April 16, 2021, Pawn America again requested that AFM reconsider its unsupportable decision to apply fourteen deductibles for the losses caused by the localized civil commotion in the wake of the killing of George Floyd Jr.

49.     By letter dated April 23, 2021, AFM again refused to pay the full amount of Pawn America's losses, instead maintaining its position that fourteen separate deductibles applied, without attempting to address the law cited by Pawn America in support of its position that the losses were all the result of one "occurrence" under the Policy. AFM asserted again that the losses arose from individual acts of vandalism and/or theft that were separate occurrences.

50.     AFM's application of a separate deductible at each insured location, as set forth in the January 29, 2021 Letter, was in breach of the Policy and constituted an unreasonable denial of benefits due to Pawn America under the Policy.

51.     AFM has applied an unreasonable interpretation of the Policy's terms in adhering to its decision to apply fourteen separate deductibles, without giving any due consideration to applicable case law distinguishing between individual acts of vandalism

and theft, on the one hand, and the sort of civil commotion that occurred as a result of the killing of George Floyd Jr. and which gave rise to the insured losses, on the other. Consequentially, AFM's withholding of full Policy proceeds is without a reasonable basis.

## CAUSES OF ACTION

### Count One – Breach of Contract

52.     Pawn America restates and incorporates by reference the above-numbered paragraphs.

53.     The Policy is a valid and binding contract.

54.     Each of the Pawn America Insured Locations is covered property under the Policy.

55.     Each of the Pawn America Insured Locations suffered insured loss or damage during the time period from May 26 to May 31, as set forth more particularly in the chart in ¶ 35, *supra*.

56.     The Policy covers the losses suffered at the Pawn America Insured Locations set forth in the chart in ¶ 35, subject to a "per occurrence" deductible.

57.     Each of the Pawn America Insured Locations suffered direct physical loss or damage as a result of civil commotion precipitated by the killing of George Floyd Jr.

58.     Civil commotion is a covered peril under the "all risks" Policy.

59.     The loss or damage to all Pawn America Insured Locations was caused by a single "occurrence" under the Policy.

60.     The Policy requires AFM to pay the full amount of Pawn America's losses subject to one $10,000 deductible.

61.     Pawn America has satisfied all conditions to coverage under the Policy.

62.     AFM breached its obligations to Pawn America under the Policy by refusing to fully reimburse Pawn America for its losses subject to one $10,000 deductible.

63.     AFM's refusal to pay the full amount of Pawn America's losses, and to acknowledge that the losses all arose from a single occurrence, is unreasonable and without just cause or excuse.

64.     As a direct and proximate cause of AFM's contractual breaches, AFM has sustained direct and consequential loss in excess of $96,870, including unreimbursed losses and attorney's fees and other costs and expenses, in an amount to be proven at trial.

## Count Two - Declaratory Judgment

65.     Pawn America restates and incorporates by reference the above numbered paragraphs.

66.     The Policy covers the losses suffered at the Pawn America Insured Locations set forth in the chart in ¶ 35 of this Complaint, subject to a "per occurrence" deductible.

67.     An actual controversy of a justiciable nature exists between AFM and Pawn America concerning the interpretation of the Policy's "occurrence" definition and the rights and obligations of the parties under the Policy. Issuance of declaratory relief by this Court will terminate the existing controversy between the parties.

68.     Pawn America seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 stating that Pawn America's losses arose from a single "occurrence" under the Policy and that the Policy authorizes AFM to deduct a single $10,000 deductible for the loss described above and as set forth in the chart in ¶ 35 of this Complaint.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Pawn America demands a jury trial on all issues so triable.

**WHEREFORE,** Pawn America requests judgment in its favor and against Affiliated FM Insurance Company, awarding Pawn America the following:

A.   Damages for all direct and consequential losses sustained as a direct consequence of AFM's failure to honor the terms of the Policy, in an amount to be proven at trial;

B.   Any interest on the above-described amounts, including pre-judgment and post-judgment interest at the highest rates allowed by law;

C.   A declaratory judgment that the civil commotion following the killing of George Floyd Jr. is a single occurrence under the insurance policy;

D.   All attorney fees, costs, and expenses in bringing this action, as allowed by law.

E.   Such other and further relief as the Court deems necessary, just, or proper.

Dated: July 30, 2021                              */s/ Andrew J. Glasnovich*
                                                   Andrew J. Glasnovich (0398366)
                                                   Joshua Poertner, (401056)
                                                   **STINSON LLP**
                                                   50 South Sixth Street, Suite 2600
                                                   Minneapolis, MN 55402
                                                   Telephone: 612.335.1500
                                                   drew.glasnovich@stinson.com
                                                   joshua.poertner@stinson.com

Christina D. Arnone – KS #24522
(*pro hac vice* pending)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-2469
christina.arnone@stinson.com

**ATTORNEYS FOR PLAINTIFF**